UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michelle R. Olen, on behalf of herself
and all those similarly situated,

            Plaintiff,

v.

Northern Tier Retail, LLC,

            Defendant.

Civil No. 11-2665 (DWF/JJG)

MEMORANDUM
OPINION AND ORDER

---

Thomas J. Lyons, Esq., and Thomas J. Lyons, Jr., Esq., Lyons Law Firm, PA, counsel for Plaintiff.

James K. Langdon, Esq., Shari L. J. Aberle, Esq., and Kathryn Johnson, Esq., Dorsey & Whitney, LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Defendant Northern Tier Retail, LLC's Amended Motion to Dismiss (Doc. No. 13). For the reasons set forth below, the Court grants the motion.

## BACKGROUND

During 2011, Plaintiff Michelle Olen ("Olen") received unemployment benefits through Minnesota's Unemployment Insurance Program. (Doc. No. 8, Am. Compl. ¶¶ 7–8.) Like many participants, she received her benefits through U.S. Bank's Visa debit card program, ReliaCard. (*Id.* ¶ 9.) On July 20, 2011, Olen purchased $20 of

gasoline from one of Defendant Northern Tier Retail, LLC's ("Northern Tier") SuperAmerica stores. (*Id.* ¶¶ 18–19.) Rather than enter the store, Olen made the purchase with her ReliaCard at the pump. (*Id.* ¶¶ 22, 27.) Because Olen selected the "credit" payment option at the pump (instead of paying inside the store and authorizing the transaction with her PIN), Northern Tier placed a hold[1] on her account in the amount of $74. (*Id.* ¶¶ 26–27.) Olen claims that she was unaware that a hold, exceeding the amount of her purchase, might be placed on her account because Northern Tier failed to disclose or otherwise provide notice of its use of such holds. (*Id.* ¶¶ 28–29.)

Several hours later, Olen attempted to use her ReliaCard again at a Wal-Mart store to purchase $91.76 of groceries and to obtain $20 "cash back" from her account. (*Id.* ¶ 30.) Wal-Mart, however, declined Olen's card. (*Id.* ¶ 31.) After trying to pay again, Olen called ReliaCard's customer service number and learned that her available account balance was insufficient to cover the $111.76 transaction. (*Id.* ¶¶ 32–34.) Olen ultimately purchased her groceries but "was forced" to pay $40 in cash and was able to use her ReliaCard to pay only the remaining $51.76. (*Id.* ¶ 36.) She did not withdraw an additional $20 in cash as she had planned. (*Id.* ¶ 40.) When Olen later reviewed her account activity online, she discovered a $74 "pending transaction" with Northern Tier's SuperAmerica store. (*Id.* ¶ 37.) She contacted the ReliaCard customer service number

---

[1]   This practice is also known as "blocking." As discussed in the parties' memoranda, merchants often place temporary holds on debit and credit accounts to guarantee payment and to ensure that a particular transaction does not exceed the consumer's credit line or overdraw his or her account. (Doc. No. 16, at 5–10; Doc. No. 19, at 4–6.)

again and a representative told her that the "pending transaction" represented a hold that would remain on her account until Northern Tier submitted the actual amount of Olen's purchase to the bank. (*Id.* ¶ 38.) "Approximately twenty-four (24) hours later," Northern Tier instructed the bank to debit $20, and the $74 hold was removed on July 21, 2011. (*See id.* ¶ 39.)

Olen now claims that Northern Tier's hold forced her to use her "emergency cash supply" to purchase groceries and to forgo withdrawing $20. (*Id.* ¶ 40.) She also alleges that, by placing holds on customer accounts without clear disclosures or notifications, Northern Tier has deprived thousands of other consumers of the use of their money. (*Id.* ¶ 50.) Accordingly, she seeks to pursue a class action on behalf of all such consumers. (*Id.* ¶ 47.)

Olen's Amended Class Action Complaint asserts the following causes of action against Northern Tier: (1) Violation of Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*; (2) Conversion; (3) Violation of Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; and (4) Breach of Contract. Northern Tier now moves to dismiss all four claims. (Doc. No. 13.)

## DISCUSSION

**I.     Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory

3

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II. Electronic Fund Transfer Act**

Northern Tier argues that Olen's complaint fails to state a claim under the Electronic Fund Transfer Act ("EFTA") because the statute's disclosure requirements apply only to financial institutions. The EFTA requires that "[t]he terms and conditions of electronic fund transfers involving a consumer's account shall be disclosed at the time the consumer contracts for an electronic fund transfer service . . . ." 15 U.S.C.

4

§ 1693c(a).  15 U.S.C. § 1693b(a) of the EFTA expressly grants the Board of Governors of the Federal Reserve System "the authority and responsibility to 'prescribe regulations to carry out the purposes' of the act," *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008), and 12 C.F.R. § 205 ("Regulation E") administers the EFTA as dictated by the statute.  *See also Johnson v. U.S. Bank Nat'l Ass'n*, 276 F.R.D. 330, 331 (D. Minn. 2011).  Express delegation of authority by Congress to an administrative agency to "fill any gap" left by a particular statute requires that the legislative regulations be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).  An EFTA claim should be dismissed when neither the language of the statute nor a provision of Regulation E applies to the defendant's conduct.  *See Azose v. Wash. Mut. Bank*, 588 F. Supp. 2d 366, 373 (E.D.N.Y. 2008) (dismissing EFTA claim because "neither the EFTA nor Regulation E required [defendant] as the ATM operator to make any disclosure to [p]laintiffs concerning any fee that the account-holding bank may impose on [p]laintiffs"); *see also Metro. Med. Ctr. & Extended Care Facility v. Harris*, 693 F.2d 775, 782–83 (8th Cir. 1982) (looking to implementing regulations for guidance as to statutory interpretation).

The question before the Court is whether the EFTA's disclosure provisions in 15 U.S.C. § 1693c(a) apply to a business entity like Northern Tier that is not a financial institution.  The statute itself does not expressly state whether any or all of its provisions

apply to entities other than financial institutions,[2] and the Court is unaware of any case that construes 15 U.S.C. § 1693c(a) of the EFTA to require non-financial institutions to provide notice of their use of holds as Olen asserts here. (*See* Am. Compl. ¶ 59 (alleging that Northern Tier violated 15 U.S.C. § 1693c(a) by "failing to disclose that a condition of using its pay-at-pump service was the imposition of an account hold exceeding the purchase").) *Contra Grillasca v. Hess Amerada Corp.*, No. 8:05-CV-1736-T-17TGW, 2006 WL 3313719, at *3 (M.D. Fla. Nov. 14, 2006) (concluding that the "EFTA does not apply to the challenged acts [defendant gas station's placements of 'holds' on customer accounts in amounts substantially higher than the amounts contracted for by the customers when they purchased their gasoline] because it does not address whether businesses must notify their potential customers regarding any 'holds'").

In light of the absence of an express statement by Congress in the EFTA regarding any notice requirement for non-financial institutions, the Court looks to Regulation E for guidance. *See Chevron*, 467 U.S. at 842-44 (recognizing "the principle of deference to administrative interpretations" and noting that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is

---

[2] The specific disclosure requirements in the EFTA, however, do repeatedly refer to financial institutions. 15 U.S.C. § 1693c(a)(1)–(10). Still, the statute does not expressly limit its coverage to financial institutions and extends to service providers in certain instances, stating: "If electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Bureau shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by this subchapter are made applicable to such persons and services." 15 U.S.C. § 1693b(d)(1).

based on a permissible construction of the statute"). Regulation E contains the following coverage provision:

> This part applies to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account. Generally, this part applies to financial institutions. For purposes of §§ 205.3(b)(2) and (b)(3), 205.10(b), (d), and (e), 205.13, and 205.20, this part applies to any person.

12 C.F.R. § 205.3(a). As defined by the regulation, a corporation constitutes a "person." 12 C.F.R. § 205.2(j).[3] None of the subsections that explicitly apply to "persons," however, are implicated with respect to the conduct at issue in this case.[4] Olen has not alleged that a transfer took place using information derived from a check or similar paper instrument. 12 C.F.R. § 205.3(b)(2). Nor does this dispute involve preauthorized recurring transfers or attempts to collect a fee for unpaid checks. 12 C.F.R. §§ 205.2(k), 205.3(b)(3), 205.10. Rather, Olen alleges that she initiated a transfer with her Visa debit card to pay for a gasoline purchase. (Am. Compl. ¶¶ 1, 9–10, 20, 22.)

---

[3]   "Financial institution," on the other hand, "means a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services." 12 C.F.R. § 205.2(i).

[4]   Two provisions deal with specific forms of fund transfers: transfers based on information derived from a check or similar paper instrument and electronic transfers to collect fees on unpaid checks (e.g., overdraft fees). 12 C.F.R. § 205.3(b)(2), (b)(3). Section 205.10 pertains to preauthorized transfers. 12 C.F.R. §§ 205.10(b), (d), (e). A preauthorized transfer means a transfer "authorized to occur at substantially regular intervals." 12 C.F.R. § 205.2(k). The last provision requires "any person subject to the act . . . [to] retain evidence of compliance . . . ." 12 C.F.R. § 205.13(b).

Here, Olen asserts violations of the disclosure provisions of 15 U.S.C. § 1693c. (Am. Compl. ¶ 59.) Regulation E carries out the purpose of those notice provisions in 12 C.F.R. § 205.7, which specifically requires that a "financial institution" shall provide a series of disclosures "at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account." 12 C.F.R. § 205.7. Because 12 C.F.R. § 205.7 is not among the six specific subsections of Regulation E that apply to "any person," the Court concludes that the disclosure requirements set forth in 15 U.S.C. § 1693c, as further articulated in 12 C.F.R. § 205.7, apply only to financial institutions.

Olen does not claim that Northern Tier is a financial institution. Instead, the Amended Class Action Complaint alleges only that Northern Tier violated § 1693c(a) by not providing notice that it would place a hold on a customer's account as "a condition of using its pay-at-pump service." (Am. Compl. ¶ 59.) These allegations do not establish a claim under the EFTA or Regulation E. *See Azose v. Wash. Mut. Bank*, 588 F. Supp. 2d 366, 372–73 (E.D.N.Y. 2008) (dismissing an EFTA claim where neither the language of the statute nor Regulation E applied to the defendant's conduct).

Because 12 C.F.R. § 205.7 (implementing the notice provisions of 15 U.S.C. § 1693c at issue here) is not one of the specified provisions to which non-financial institutions are subject under 12 C.F.R. § 205.3, the EFTA does not apply to Northern Tier's conduct. Therefore, Olen has not stated a plausible claim against Northern Tier under the EFTA.

**III.   Conversion**

Northern Tier argues that Olen has not adequately pled a conversion claim. To prevail on a conversion theory, a plaintiff must show that the defendant committed "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (citing *Larson v. Archer-Daniels-Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948)). To constitute conversion, interference must be either permanent or must last "for an indefinite length of time." *Bloom v. Hennepin Cnty.*, 783 F. Supp. 418, 441 (D. Minn. 1992); *Hildegaarde v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 269 (1955). A claim for conversion cannot survive, however, where the interference was lawful. *Cohen v. Beachside Two-I Homeowner's Assoc.*, Civ. No. 05-706, 2005 WL 3088361, at *15 (D. Minn. Nov. 17, 2005); *Naegele Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235, 238 (Minn. Ct. App. 1996).

Further, the proper measure of damages under Minnesota law is the fair market value of the property at the time it was converted. *Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 963 (D. Minn. 2007); *Fawcett v. Heimbach*, 591 N.W.2d 516, 520 (Minn. Ct. App. 1999); *McKinley v. Flaherty*, 390 N.W.2d 30, 33 (Minn. Ct. App. 1986). Specifically because "the measure of damages in conversion actions is the full value of the chattel at the time of the tort, conversion is 'properly limited . . . to those serious, major, and important interferences with the right to control chattel which justify requiring the defendant to pay its full value.'" *Bates v. Armstrong*, 603 N.W.2d 679, 682 (Minn.

Ct. App. 2000) (quoting Restatement (Second) of Torts § 222A cmt. c (1965))); *Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1024 (D. Minn. 2011).

In her Amended Class Action Complaint, Olen alleges that Northern Tier "unlawfully instructed [her] financial institution to hold funds." (Am. Compl. ¶ 61.) She does not point to any facts, however, that would establish that Northern Tier's use of a hold was unlawful in the State of Minnesota. While Olen does mention an advisory opinion issued by the California Attorney General, which states that a gasoline merchant's practice of placing an account hold in excess of a consumer's purchase amount without notice violates the California Unfair Competition Act (*Id.* ¶ 41), she has failed to properly support her allegation that Northern Tier "committed conversion by exercising dominion and control over goods inconsistent with, and in repudiation of, [Olen's] rights in those goods for an indefinite amount of time" (*Id.* ¶ 63). Such conclusory statements do not pass muster under *Twombly*.

Olen has also failed to plead adequate damages to pursue a conversion claim. "A plaintiff cannot pursue a conversion claim for damages where no damages arise from the alleged conversion." *Microsoft Corp.*, 484 F. Supp. 2d at 963–64 (citing *Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 929 (8th Cir. 2005)). Olen only claims that she was damaged as a result of the loss of use of $54 for twenty-four hours.[5] (Am. Compl.

---

[5] The Court notes that, in her memorandum in opposition to the instant motion to dismiss, Olen also claims that her property was "worth less" after Northern Tier removed its hold. (Doc. No. 19, at 18.) Olen alleges that this devaluation occurred "if only by loss of interest." (*Id.*) As Northern Tier points out, however, the funds in Olen's ReliaCard
(Footnote Continued on Next Page)

¶¶ 39, 64.) She alleges that this loss of use "forced her to use $40.00 of emergency cash for groceries and prevented her from obtaining $20.00 in cash from her account." (*Id.* ¶ 64.) Still, the proper measure of damages in Minnesota is the fair market value of the plaintiff's property at the time of the conversion. *Microsoft Corp.*, 484 F. Supp. 2d at 963; *Fawcett*, 591 N.W.2d at 520. Because Olen cannot recover any damages other than the fair market value of the property with which Northern Tier allegedly interfered and because she regained complete access to her $54 within twenty-four hours, Olen has not alleged any damages recoverable on a conversion claim.

Olen's inability to plead adequate damages reveals a further deficiency in her claim: conversion claims provide a remedy for acts that "deprive the owner of possession permanently or for an indefinite length of time." *Bloom*, 783 F. Supp. at 441 (citing *Hildegaarde*, 244 Minn. at 413, 70 N.W.2d at 269). The fair market value measurement of damages reflects the necessary high degree of interference. Conversion amounts to the "exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Buzzell*, 802 F. Supp. 2d at 1024; *Bates*, 603 N.W.2d at 682 (quoting Restatement (Second) of Torts § 222A cmt. c (1965)). Here, Olen alleges only that

---

(Footnote Continued From Previous Page)

account could not have earned interest, according to the terms and conditions of her ReliaCard Cardholder Agreement. (Doc. No. 21, at 8 n.3 (citing U.S. Bancorp, *The ReliaCard Cardholder Agreement* ¶ 3, *available at* https://www.onlinecardaccess.com/fsrcard/documents/ReliaCard_TANDC.pdf).)

Northern Tier interfered with her access to funds for a twenty-four hour period.  (*See* Am. Compl. ¶¶ 39, 63–64.)  Even if Olen had adequately pled an unlawful interference or had alleged sufficient damages, she is unable to demonstrate a permanent or indefinite interference sufficient to support a claim for conversion.

## IV. Breach of Contract

Northern Tier also challenges Olen's breach of contract claim, arguing that Olen has not adequately alleged that a breach occurred.  "[A] breach occurs where a party renounces its liability, or where it impedes or fails to perform its obligations under the contract."  *Assoc. Cinemas of Am. v. World Amusement Co.*, 276 N.W. 7, 10 (Minn. 1937).  As a matter of Minnesota law, a breach of contract claim fails "if the plaintiff cannot establish that he or she has been damaged by the alleged breach."  *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578–79.  Thus, a plaintiff must allege that a breach of the contract caused her damages.  *Christensen v. Metro. Life Ins. Co.*, 542 F. Supp. 2d 935, 943 (D. Minn. 2008); *Lipka v. Minn. Sch. Emp. Assoc. Local 1980*, 537 N.W.2d 624, 631 (Minn. Ct. App. 1995), *aff'd* 550 N.W.2d 618 (Minn. 1996); *Nguyen v. Control Data Corp.*, 401 N.W.2d 101, 105 (Minn. Ct. App. 1987).

Olen alleges that she contracted with Northern Tier to buy gasoline for $3.699 per gallon.  (Am. Compl. ¶¶ 70–74.)  Olen concedes, however, that after her bank processed the transaction she paid exactly that agreed upon price for the gasoline.  (*Id.* ¶ 39.)  She does not claim that she ultimately paid more than $3.699 per gallon or that Northern Tier did not provide the gasoline in exchange for payment.  Since Olen admits that she paid no more than the advertised price for the gasoline she purchased, she cannot show that

Northern Tier "renounce[d] its liability, [or] impede[d] or fail[ed] to perform its obligations under the contract." *Assoc. Cinemas*, 276 N.W. at 10.

Notably, despite the widespread use of blocking, it appears that no court has affirmatively held that a merchant's imposition of a temporary hold to guarantee payment from the consumer constitutes a breach of contract. *But see Grillasca*, 2006 WL 3313719, at *1, 5–7 (declining to dismiss a breach of contract claim under the *Conley* "any set of facts" standard where the complaint contained a general request for relief). Because Northern Tier did not impede or fail to perform any contractual obligations but rather provided gasoline to Olen at the advertised price, the Court concludes that Olen has not pled facts that could establish a breach of contract. Olen's breach of contract claim must therefore be dismissed.

## V.     Minnesota Uniform Deceptive Trade Practices Act

Northern Tier also seeks to dismiss Olen's claim under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"). The MDTPA entitles any person "likely to be damaged by a deceptive trade practice" to injunctive relief, irrespective of the existence of actual monetary damages or deceptive intent. Minn. Stat. § 325D.45, subd. 1. Among other deceptive trade practices, the statute entitles a claimant to relief when a person "advertises goods . . . with intent not to sell them as advertised" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." Minn. Stat. § 325D.44, subd. 1(9) & (13). Injunctive relief is the MDTPA's sole remedy and it is available only "to a person likely to be damaged" by a deceptive trade practice in the future. *See* Minn. Stat. § 325D.45, subd. 1; *Gardner v.*

*First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (noting that the MDTPA "provides relief from future damage, not past damage"); *see also Lofquist v. Whitaker Buick-Jeep-Eagle, Inc.*, No. C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001).  Thus, in order to proceed on an MDTPA claim and to ultimately obtain an injunction, "a plaintiff must allege facts that demonstrate a risk of future harm." *Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc.*, Civ. No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005).

Here, Olen claims that Northern Tier's practice of blocking creates "a risk of future confusion or misunderstanding" for her and the proposed class because Northern Tier "still does not notify consumers that it may cause excessive account holds" and because Olen is unaware whether Northern Tier's other Minnesota locations also utilize holds.  (Am. Compl. ¶ 69.)  Because Olen has personally experienced Northern Tier's imposition of a hold on her account, however, she is clearly aware of the practice and is unlikely to be confused in the future.  *Indep. Glass Ass'n*, 2005 WL 3079084, at *2 (granting summary judgment against an MDTPA plaintiff and noting that, "now that [the plaintiff] is aware of [the defendant's] alleged steering tactics, [the plaintiff] is even more likely to be vigilant in the future").  Having already been subjected to a hold at a Northern Tier gas station, and having subsequently investigated the transaction with a customer service agent (*see* Am. Compl. ¶ 38), Olen is now on notice of Northern Tier's blocking practice and is likely to plan future debit card purchases accordingly.  Because

Olen has not alleged any facts to demonstrate a likely risk of future harm, her MDPTA claim is also properly dismissed.[6]

For the reasons set forth herein, the Court dismisses all four counts of Olen's Amended Class Action Complaint.

### ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant Northern Tier Energy, LLC's Amended Motion to Dismiss (Doc. No. [13]) is **GRANTED**.

2. Plaintiff's Amended Class Action Complaint (Doc. No. [8]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 4, 2012                    s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge

---

[6]   Additionally, both parties have identified a variety of resources that explain blocking, the circumstances under which it occurs, and simple methods to avoid holds. (Am. Compl. ¶¶ 41, 43, 44; Doc. No. 16, at 5–10; Doc. No. 17, Johnson Aff. ¶¶ 2–4, Exs. 1–3.) The parties agree that these resources are widely and readily available to consumers. (Doc. No. 16, at 7, 9–10; Doc. No. 19, at 5–6, 7–8.) Such information further reduces the likelihood of future confusion or misunderstanding among the proposed class members.